UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JACQUELINE WRIGHT,

                              Plaintiff,         09-CV-6593

              v.                                 **DECISION
                                                 and ORDER**
MONROE COMMUNITY HOSPITAL,

                              Defendant.
_____

## INTRODUCTION

Plaintiff, Jacqueline Wright ("Plaintiff"), brings this action pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e); the Pregnancy Discrimination Act (as amended to Title VII); and the New York State Human Rights Law ("NYSHRL"), Executive Law § 290, against Defendant Monroe Community Hospital ("Defendant" or "Hospital"), alleging discrimination based on sex, race, and retaliation. (Dkt. No. 1 ¶ 1). Specifically, Plaintiff alleges that Defendant subjected her to an ongoing discriminatory and hostile work environment because of her identity as an African-American woman, who was also pregnant at the time of the alleged events. See id. at ¶¶ 5, 32-6.

Defendant moves to dismiss Plaintiff's claims on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has failed to state a claim for any of her causes of action. See generally, Dkt. No. 12-10. Defendant

1

argues that Plaintiff has failed to state a plausible race discrimination claim because her claim is based on the alleged acts of an elderly resident of the Hospital, and not on an act of the Hospital itself. <u>Id.</u> at 7. Defendant further argues that Plaintiff has failed to establish a prima facie claim for sex discrimination, and that, as a result, her claim under the Pregnancy Discrimination Act must also fail. <u>Id.</u> at 9-12.

Additionally, Defendant argues that Plaintiff has failed to state a claim of hostile work environment because she has failed to establish that there was a pattern of severe or pervasive hostility in the workplace. <u>Id.</u> at 12-3. Finally, Defendant argues that Plaintiff's retaliation claims fail because she never alleged that she complained of unlawful discrimination to her employer or that she engaged in some other protected activity that would serve as the basis for her employer's alleged retaliation. <u>Id.</u> at 15.

Plaintiff opposes Defendant's motion and asks that this Court deny Defendant's motion in its entirety.[1] For the reasons set

---

[1]Plaintiff argues in her reply memorandum that this Court should strike Defendant's motion to dismiss because Defendant "violate[d] Local Rule 10(a)" by failing to double-space its memorandum of law in support of the instant motion. (Dkt. No. 14 at 9). While Defendant did not double space its brief, I do not find the mistake warrants the harsh sanction of striking its memorandum. However, Defendant should double-space future submissions in accordance with Local Rule 10(a). <u>See</u> <u>Mills v. Luplow</u>, 2008 U.S. Dist. LEXIS 79028 (W.D.N.Y. June 30, 2008)(McCarthy, J)(finding that Defendant's failure to paginate its documents according to Local Rule 10(a) did not warrant the sanction of striking the pleadings).

forth below, this Court finds that Plaintiff has not established a prima facie case of discrimination based on race or sex. Accordingly, Defendant's motion to dismiss is granted, and Plaintiff's Complaint is hereby dismissed.

## BACKGROUND

The following facts are taken from the plaintiff's complaint, and are not findings of fact by the Court, but rather assumed to be true for the purposes of deciding this motion and are construed in the light most favorable to the plaintiff, the non-moving party. The Court notes that, in addition to a memorandum of law, Defendant has submitted various documents which Plaintiff "quotes and/or makes reference to" in her Complaint. (Dkt. No. 12-10 at 4). Although Plaintiff did not attach to her Complaint any of the documents her Complaint referenced, Defendant argues that the Court may consider "any ... statements or documents incorporated into the complaint by reference ... and documents possessed or known to the plaintiff and upon which it relied in bringing the suit." (Id. at 5)(quoting ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)(internal quotations omitted)(emphasis supplied by Defendant). While the Court may include documents incorporated by reference and information from public records, this Court's discussion will not give consideration to the documents attached by the Defendant and will instead limit its consideration "to the facts as presented within the four corners of the

complaint...." <u>Taylor v. Vt. Dep't of Educ.</u>, 313 F.3d 768, 776 (2d Cir. 2002); <u>see also</u> <u>Hayden v. County of Nassau</u>, 180 F.3d 42, 54 (2d Cir. 1999).

Plaintiff is an African-American woman, who was at all times relevant, a long-term employee of Defendant Monroe Community Hospital. (Dkt. No. 1 ¶ 5). Monroe Community Hospital is a non-profit residential health care facility in Rochester, New York that houses a number of skilled nursing units that provide long-term care to people of all ages, including those with Alzheimer's and dementia.[2] (Dkt. No. 12-10 at 2). Plaintiff began working as a Certified Nursing Assistant ("CNA") for Monroe Community Hospital in October of 1997. (Dkt. No. 1 ¶ 7).

In January 2008, Plaintiff informed the Hospital that she suspected a well-liked patient of using illegal substances, claiming the patient emitted "strong odors that smelled like marijuana." <u>Id.</u> at ¶ 8. Plaintiff reported this incident (based upon instructions from one of the Hospital's nurse managers, Brad Hughes ("Nurse Manager Hughes")) to notify the charge nurse of any further issues. <u>Id.</u> at ¶ 9. Plaintiff subsequently reported her suspicions concerning the patient's drug use to the evening charge nurse, Doug Mason, LPN ("Charge Nurse Mason"), who reportedly

---

[2]Facts concerning Defendant's identity are taken from both Plaintiff's complaint and Defendant's memorandum of law.

4

followed up on Plaintiff's report and removed "a bag" from the patient's possession.  Id. at ¶ 10-1.

Plaintiff states that on February 24, 2008, she again reported her suspicions of the patient's alleged drug use.  Id. at ¶ 12-3. Plaintiff claims that, as a result of this report, she was confronted by the patient's assigned nurse who "aggressively swore at Plaintiff," questioning Plaintiff's motives for interfering with the patient and telling Plaintiff she "should just leave [that] patient ... alone."  Id. at ¶ 13.

After the second report, Plaintiff was reassigned from the patient she suspected of drug use to another patient, an elderly woman with dementia.   Id. at ¶ 16.  Plaintiff alleges that Defendant "purposely" reassigned her to this patient because it was well-known that (this patient) "made intolerable racist comments and would target the minorities within the staff and make complaints and accusations against them...."  Id. at ¶ 17.

Plaintiff alleges that this patient "repeatedly denigrated" her by describing Plaintiff with a derogatory racial slur.  Id. at ¶ 21.  Plaintiff complained about this patient's behavior, but was told that the patient "had dementia" and that "sometimes you just have to deal with it."  Id. at ¶ 23.

Around this time, Plaintiff received notices of discipline for violating the Defendant's time and attendance policy, and received

a written warning concerning an "alleged incident" between Plaintiff and her reassigned patient. Id. at ¶ 18-9.

On April 1, 2008, Plaintiff attended an investigatory hearing for the alleged incident with the patient. Id. at ¶ 25. Nurse Manager Hughes, Nurse Administrator Jeff Schwertfeger, and several staff members who wrote notices of concern were also in attendance. Id. After the hearing, on April 4, 2008, Plaintiff received another notice of discipline for allegedly failing to provide safe and compassionate care to the Hospital's residents. Id. at ¶ 26. Then, on July 1, 2008, Plaintiff attended another investigatory hearing, reportedly due to a different resident's complaint. Id. at ¶ 29.

Plaintiff alleges that the next day, on July 2, 2008, co-worker Patricia Hill ("Hill") approached her and asked her to assist with a room change. Id. at ¶ 30. Plaintiff informed Hill that she could not assist with the room change because she had just come back from a pulled abdominal muscle injury. Id. at ¶ 31. Hill allegedly became "belligerent" and screamed at Plaintiff, saying "if you can't do anything, why don't you have your doctor take you out" and "I'm just sick of your attitude, just because your [sic] pregnant doesn't mean your [sic] handicap [sic]." Id. at ¶ 32. Defendant then held an emergency meeting with Plaintiff, wherein a hospital representative told Plaintiff that "pregnancy is

a condition, not a disability," and that if she had a limitation she needed a doctor's note.  Id. at ¶ 35.

On July 14, 2008, Plaintiff received a note from her physician stating that, due to her pregnancy, she was advised not to move furniture.  Id. at ¶ 36.  Plaintiff alleges that Defendant "continued to harass the Plaintiff, increase her workload and scrutinize[d] her work to the point that she was taken out on medical leave."  Id. at 37.  Then again, on July 24, 2008, Plaintiff received another notice of discipline, this time as a result of the July 1, 2008 investigative hearing.  Id. at 38.

In September 2008, Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") against the Hospital, alleging racial and gender discrimination.  Id. at ¶¶ 4, 39.

On January 12, 2009, while on medical leave, Plaintiff received a call from Nurse Administrator Schwertfeger instructing her to return to work.  Id. at ¶ 41.  Plaintiff informed Schwertfeger that her doctor told her to remain on leave through the end of the month.  Id. at ¶ 42.  Schwertfeger instructed Plaintiff to contact Human Resources representative Robert Bilsky ("Bilsky"), who informed Plaintiff that she had to report to work and then "hung up on her."  Id. at ¶ 43.  Bilsky then contacted Plaintiff shortly afterwards and "simply told Plaintiff to forward her medical information."  Id. at ¶ 44.

Plaintiff filed this action on November 23, 2009. (See generally Dkt. No. 1). The Defendant responded by filing the instant motion to dismiss.

## DISCUSSION

### I.   Standard of Review under Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure states that "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, courts apply the same standard applicable to a motion under Rule 12(b)(6). See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999). To withstand a motion to dismiss under Rule 12(b)(6), the complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." <u>Id</u>. (internal citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id</u>. Determining whether a complaint meets the plausibility standard is "context-specific" and requires that the court "draw on its judicial experience and common sense." <u>Id</u>. at 1950.

### A.   <u>Plaintiff has Failed to State a Claim of Hostile Work Environment.</u>

Plaintiff has alleged nine causes of action against Defendant.[3] Plaintiff's first and fourth causes of action allege race-based claims of hostile work environment. (Dkt. No. 1 at 8, 15). Plaintiff's first cause of action alleges that Defendant subjected her to harassment from supervisors, which was condoned by management, and motivated by Plaintiff's race and national origin under 42 U.S.C. § 1981. <u>Id.</u> at ¶ 46. Plaintiff's fourth cause of

---

[3]While Plaintiff's supervisors and management are named "Individually" within her Complaint (Dkt. No. 1 ¶ 46), these named individuals do not appear in the Caption of her Complaint, nor were they named in her EEOC charge. Plaintiff lists her 3rd, 4th, 5th, and 6th causes of action "As and Against Defendant Monroe Community Hospital <u>Only</u>," while not adding that limitation to her 1st, 2nd, 7th, 8th, and 9th causes of action. (<u>See</u> <u>generally</u> Dkt. No. 1). Defendant argues Plaintiff's claims against these named employees should be dismissed; however, Plaintiff concedes in her reply that "Neither Nurse Manager Hughes, Nurse Administrator Schwartzfegger [sic], nor Human Resource Representative Bilksy, Individually, are named defendants in Plaintiff's lawsuit, nor are they intended to be." (Dkt. No. 14 at 10). As such, all of Plaintiff's causes of action will be considered "As and Against Defendant Monroe Community Hospital <u>only</u>," and will not address any of the named managers or supervisors individually.

action alleges state law claims of a hostile work environment under NYSHRL, Executive Law § 290.  Id. at ¶ 79.  Because claims under NYSHRL are governed by the same federal standards as those under 42 U.S.C. § 1981, this Court's analysis of Plaintiff's hostile work environment claims will apply concurrently to both her federal and state law claims.  See 42 U.S.C. § 1981; Executive Law § 290, et seq.  See McDowell v. N. Shore-Long Island Jewish Health Sys., 10-cv-3534, 2011 U.S. Dist. LEXIS 58653 at *12 (E.D.N.Y, June 1, 2011)(stating that claims under Section 1981 and the NYSHRL are analyzed under the same framework and, therefore, will have the same outcome); see also Rosenblatt v. Bivona & Cohen, P.C., 946 F. Supp. 298, 300 (S.D.N.Y. 1996)(Scheindlin, J.)("New York State Human Rights Law is applied in a fashion consistent with the federal civil rights laws.").

Claims under Section 1981 are governed by the same standards as those brought under Title VII.  See Ifill v. UPS, No. 04 Civ. 5963, 2005 U.S. Dist. LEXIS 5230 at *14, n. 3 (S.D.N.Y., Mar. 29, 2005)(stating "Courts 'commonly analyze the sufficiency of [claims under Section 1981] in the same manner as Title VII claims, reaching the same result.'")(citing Pagan v. New York State Div. of Parole, 98 Civ. 5840, 2002 U.S. Dist. LEXIS 4236 at *14 (S.D.N.Y., Mar. 13, 2002)).  Title VII prohibits discrimination on the basis of race with respect to, inter alia, the "terms" and "conditions" of employment.  42 U.S.C. § 2000e-2(a)(1).  One form of such

10

discrimination is the imposition of a discriminatorily hostile or abusive work environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-3, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993). Hostile work environment claims require scrutiny of the "workplace environment as a whole to discover whether it is 'abusive.'" Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001)(quoting Harris, 510 U.S. at 22 (1993)). To prevail on a hostile work environment claim under Title VII, a plaintiff must show: (1) that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment;" and (2) that "a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373-4 (2d Cir. 2002)(internal citation omitted); see also Harris, 510 U.S. at 21 (1993).

This test has both objective and subjective elements. The plaintiff must show the employer's conduct was "severe or pervasive enough to create an objectively hostile or abusive work environment," and the plaintiff must also "subjectively perceive that environment to be abusive." Alfano, 294 F.3d at 374 (2002). A plaintiff can show this by establishing either the extraordinary severity of a single incident, or the existence of a series of incidents that were "sufficiently continuous and concerted" to be considered pervasive. Id.; see also Perry v. Ethan Allen, Inc.,

11

115 F.3d 143, 149 (2d Cir. 1997).  The incidents of which a
plaintiff complains "must be more than episodic; they must be
sufficiently continuous and concerted in order to be deemed
pervasive." Carrero v. New York City Housing Auth., 890 F.2d 569,
578 (2d Cir. 1989).  The Court must look at the totality of the
circumstances, including the frequency and severity of the
discriminatory conduct, whether such conduct is physically
threatening or humiliating, and whether such conduct unreasonably
interferes with the plaintiff's work performance. See Harris 510
U.S. at 23.

Plaintiff alleges that Defendant subjected her to a hostile
work environment on the basis of her race.  I find that Plaintiff
has failed to sufficiently allege such a claim.  At no point in her
Complaint does Plaintiff allege that Defendant harassed her in
race-specific or derogatory terms, nor does she show that any of
Defendant's decisions were specifically motivated by a racial
animus.  See Banks v. City of Albany, 953 F. Supp. 28, 33
(N.D.N.Y., 2007)(requiring plaintiff to prove that defendant
employer had a discriminatory intent or discriminatory motive).

Instead, Plaintiff alleges that she was subjected to
derogatory remarks from an elderly resident with dementia.
Plaintiff attempts to relate her assignment to this resident with
the Defendant's alleged discriminatory motive, however, Plaintiff's
own recitation of the events does not support this finding.

Plaintiff clearly relates her patient re-assignment to the reports she made concerning a well-liked patient's suspected drug use. Dkt. No. 1 at ¶ 16.  Plaintiff states that, after her second report of the patient's alleged drug use, she was confronted by the patient's assigned nurse who "aggressively swore at Plaintiff," and told Plaintiff she "should just leave [that] patient ... alone." Id. at ¶ 13.  Plaintiff claims she was then re-assigned to the elderly female patient with dementia.  Such allegations do not support a finding of racially motivated animus in Defendant's decision-making, nor are they indicative of a workplace "permeated with discriminatory intimidation, ridicule, and insult...." Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004).

Additionally, the relevant portions of Plaintiff's Complaint merely recite elements of the claim without pleading specific factual allegations against Defendant.  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See Twombly, 550 U.S. at 555 (2007)(internal quotation marks omitted).  Accordingly, since Plaintiff has failed to sufficiently plead a race-based hostile work environment claim, her first and fourth causes of action are hereby dismissed.

13

**B.   <u>Plaintiff has Failed to Sufficiently State a Claim for
Retaliation.</u>**

Plaintiff alleges retaliation claims in five of her causes of
action.  Plaintiff's second cause of action alleges retaliation
under 42 U.S.C. § 1981; Plaintiff's fifth cause of action alleges
retaliation under Title VII "As and Against Defendant Monroe
Community Hospital, _only_;" Plaintiff's sixth cause of action claims
retaliation under the NYSHRL "As and Against Defendant Monroe
Community Hospital, _only_;" Plaintiff's eighth Cause of action
alleges retaliation under Title VII (sans the "As and
Against...Hospital..._only_" limitation); and Plaintiff's ninth cause
of action alleges retaliation under the NYSHRL, this claim also
without the "As and Against" limitation.

As noted above, although Plaintiff named some of the
Hospital's employees "Individually" within her Complaint, Plaintiff
has denied filing suit against those individual employees of Monroe
Community Hospital and states that all of her causes of action are
against Monroe Community Hospital "only."  As such, Plaintiff's
designations of her fifth and sixth causes of action as "...Against
Monroe Community Hospital _only_" are unnecessary, and her eighth and
ninth causes of action are redundant and merely re-allege the same
claims as her fifth and sixth.

To establish a prima facie case of retaliation, Plaintiff must
show: (1) participation in a protected activity known to the
Defendant; (2) an adverse employment action; and (3) a causal

connection between the protected activity and adverse action.  See Dixon v. Int'l Fed'n of Accountants, No. 10-1924-cv, U.S. Dist. LEXIS 6116 at *4-5 (2d Cir., Mar. 25, 2011)(citing Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir., 2010)).  I find that Plaintiff has not established a prima facie case for retaliation under Title VII, Section 1981, or the NYSHRL. Accordingly, Defendant's motion to dismiss is granted.

    1.  Plaintiff did not engage in a "protected activity."

Title VII prohibits retaliation against an employee who has engaged in a protected activity as that term is defined under the statute. 42 U.S.C. § 2000e-3(a).  A protected activity includes opposing or participating in, inter alia, an investigation or proceeding to oppose an employment practice made unlawful under Title VII. Id.  An unlawful employment practice under Title VII includes "discharg[ing] any individual, or otherwise ... discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

There is no allegation that Plaintiff complained of unlawful discrimination to her supervisors or other co-workers.  Plaintiff's Complaint shows that, while she may have complained about certain issues she was having at work (e.g., her concerns regarding a patient's alleged drug use), there is no allegation that she

complained that she was suffering discrimination because of her race, sex, or pregnancy.  Nor did she engage in any other activity warranting protection under Title VII.

Further, even if Plaintiff had alleged participation in a protected activity, she would still fail to establish a prima facie case of discrimination under the retaliation framework, because she does not allege that she suffered an adverse employment action. The action would have to be "materially adverse," meaning the employer's action would be capable of dissuading a reasonable worker from making or supporting a charge of discrimination could constitute retaliation.  <u>Burlington Northern & Santa Fe Railway Co.</u> <u>v. White</u>, 548 U.S. 53, 57 (2006).

While Plaintiff originally attempted to show that she met this standard by alleging that Defendant's actions "resulted in Plaintiff's retaliatory discharge on March 29th, 2007" (Dkt. No. 1 at ¶ 87), Plaintiff now admits that she was never discharged from the Hospital (Dkt. No. 14 at 15, n. 2).[4]  Plaintiff claims that she received multiple "notices of discipline" from Defendant in response to her complaints about "what she perceived to be a hostile environment" (Dkt. No. 14 at 17), however, Plaintiff's Complaint simply does not support her argument.  Plaintiff argues

---

[4]Defendant states that Plaintiff continued to work full-time at Monroe Community Hospital through July 16, 2010, before she voluntarily resigned and took up employment at another hospital. (Dkt. No. 12-10 at 16).

that the complaints she made concerning the Hospital's patients (specifically the alleged derogatory remarks of an elderly woman with dementia) satisfy the protected activity requirement. However, complaints about an elderly patient's independent comments are different from complaints about a discriminatory "hostile work environment" concerning co-workers and supervisors. See Wimmer v. Suffolk City Police Dep't, 176 F.3d 125, 134-5 (2d Cir. 1999)(finding that "A claim is not cognizable under Title VII unless the plaintiff's opposition was "directed at an unlawful employment practice of his employer.")(emphasis in original).

Additionally, even if Plaintiff's complaints concerned the actions of her co-workers or supervisors, her complaints did not cite any discriminatory motive.   "Absent a claim of unlawful discrimination, general complaints about employment concerns do not constitute protected activity under Title VII."   Brummell v. Webster Cent. Sch. Dist., 2009 U.S. Dist. LEXIS 7644 at *13 (W.D.N.Y. Jan. 20, 2009)(citing Broderick v. Donaldson, 369 U.S. App. D.C. 374, 437 F.3d 1226, 1232 (D.C. Cir. 2006); see also Duckett v. Wal-Mart Stores, Inc., 2009 U.S. Dist. LEXIS 31624 at *24 (W.D.N.Y. April 14, 2009)(citing Broderick, 437 F.3d 1226, 1232 (D.C. Cir. 2006)(employee complaint that she suffered from embarrassing, humiliating and insulting treatment failed to establish that she engaged in protected activity where there was no

allegation that the treatment was motivated by a discriminatory animus).

Further, the fact that Plaintiff received notices of discipline or other forms of scrutiny from Defendant does not show that Defendant retaliated against Plaintiff. Employee investigations, unwanted scrutiny from supervisors, and negative performance evaluations without attendant negative results or deprivation of position/opportunity, do not sufficiently constitute adverse employment actions under Title VII. <u>Lee v. New York State Dept. of Health</u>, 2001 U.S. Dist. LEXIS 11287 at *45-6 (S.D.N.Y. Mar. 26, 2001). As such, I find that Plaintiff fails to sufficiently plead a claim for retaliation under the Civil Rights Act of 1991, Title VII, or the NYSHRL. Accordingly, Plaintiff's retaliation claims are hereby dismissed.

### C.   <u>Plaintiff has Failed to Sufficiently Plead a Claim of Racial Discrimination under Title VII.</u>

Plaintiff's third cause of action alleges that Defendant unlawfully subjected Plaintiff to racial discrimination under Title VII. As noted above, Plaintiff's Complaint is absent of any claims that Monroe Community Hospital or its employees ever directed racially charged comments at Plaintiff or acted against her with a racially motivated animus. While Plaintiff complains of racial hostility from an elderly patient of Monroe Community Hospital, such a complaint does not satisfy Title VII standards. Title VII is not a general bad acts statute. As noted above, a claim is not

18

cognizable under Title VII unless the plaintiff's opposition was directed at an unlawful employment practice of his employer. Wimmer, 176 F.3d at 134-5 (2d Cir. 1999).  For this reason, and the reasons noted above, I find that Plaintiff fails to sufficiently plead a claim of racial discrimination under Title VII.  As such, her third cause of action is dismissed.

**D.  Plaintiff has Failed to Sufficiently Allege Discrimination under the Pregnancy Discrimination Act.**

The Pregnancy Discrimination Act ("The Act")amends Title VII of the Civil Rights Act to provide that discrimination "on the basis of sex" includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions."  42 U.S.C. § 2000e(k). The Act requires employers to treat women "affected by pregnancy, childbirth, or related medical conditions" the same as other persons not so affected but similar in their ability or inability to work.  Id.  Like other Title VII claims, discrimination claims under the Pregnancy Discrimination Act are governed by the McDonnell Douglas framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Plaintiff must prove 1) membership in a protected group; 2) qualification for a position; 3) an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.

To establish that the adverse employment action occurred under circumstances giving rise to an inference of discrimination, a

plaintiff may demonstrate that "similarly situated" employees who do not share the plaintiff's protected characteristics were treated preferentially.  See Shumway v. United Parcel Service, Inc., 118 F.3d 60, 63 (2d Cir. 1997).  Plaintiff's Complaint does not allege any facts suggesting that she was discriminated against on the basis of sex or pregnancy.  Her claims concerning an argument she had with a co-worker also do not rise to the level of discrimination under the Pregnancy Discrimination Act.  Plaintiff alleged that, on or about July 2, 2008, a female co-worker approached Plaintiff to ask if she could assist with a room change.  After Plaintiff refused because she had just returned  from an abdominal injury, the co-worker allegedly "became belligerent" and screamed "if you can't do anything, why don't you have your doctor take you out" and "I'm just sick of your attitude, just because your [sic] pregnant doesn't mean your [sic] handicap [sic]."  While the co-worker's alleged outburst was no doubt unpleasant, it does not give rise to a discrimination claim under Title VII or the Pregnancy Discrimination Act.  Plaintiff does not allege that this behavior was encouraged or perpetuated by her employer.  See Gregory v. Daly, 243 F.3d 687, 692 at n. 3 (2d Cir. 2001)(finding that for liability to attach in a Title VII discrimination case, the employer must also be responsible for the conduct at issue).

Further, Plaintiff's Complaint clearly states that, after the incident with her co-worker, an "emergency meeting" was held where

20

Defendant asked Plaintiff to obtain a note from her doctor listing her limitations, which Plaintiff obtained.  In fact, Defendant's actions are consistent with the requirements under the Pregnancy Discrimination Act (requiring employers to treat women affected by pregnancy the same as other persons not so affected but similar in their ability or inability to work), and Plaintiff does not allege that Defendant treated her unfairly because of her pregnancy.[5]  As such, I find that Plaintiff has failed to sufficiently plead a discrimination claim under the Pregnancy Discrimination Act. Accordingly, her seventh cause of action is dismissed.

### CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is granted. Plaintiff's complaint is hereby dismissed.

**ALL OF THE ABOVE IS SO ORDERED.**


s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           July 28, 2011

---

[5]While Plaintiff alleges that a supervisor and a Human Resources representative "demanded" that she return to work while on medical leave, she closes that series of allegations by noting that she was then simply asked to forward her medical forms to the Human Resources office, without noting any further demands or repercussions. (Dkt. No. 1 ¶¶ 41-4).